**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

SUZANNE BOWSER on behalf of herself
and all others similarly situated,

               Plaintiff,

           v.

GENERAL ELECTRIC COMPANY,

              Defendant.

Civil Action No. _____

CLASS ACTION COMPLAINT

TRIAL BY JURY DEMANDED

      Plaintiff Suzanne Bowser, individually and on behalf of all others similarly situated, alleges as follows:

## **INTRODUCTION**

      1.     Plaintiff brings this class action individually and on behalf of the Classes defined below (the "Classes" or collectively the "Class") against General Electric Company ("GE") to obtain relief, including, among other things, damages and injunctive relief.

      2.     This class action is brought to remedy violations of law in connection with GE's design, manufacture, marketing, advertising, selling, warranting, and servicing of its front-loading washer machines (the "Washing Machines"). These Washing Machines have serious design defects (collectively, "Design Defects") that cause them to:

          a.   accumulate mold and mildew and/or residue or growth within the Washing Machines;

          b.   produce a moldy or mildewy odor that permeates the Washing Machine and clothes and other items washed in the Washing Machines;

    c.   fail to clean the Washing Machines and remove moisture, residue, growth, and/or bacteria that lead to the formation of mold, mildew, and/or associated foul odors;

    d.   be unusable in the manner, to the extent to, and for the purpose for which the Washing Machines were advertised, marketed, and sold.

The problems caused by the Design Defects are collectively referred to as "Mold Problems."

3.    The automatic clothes washer market is comprised of both vertical axis (*i.e.*, top-loading) and horizontal axis (*i.e.*, front-loading) washing machines.  GE offers both top-loading and front-loading washers.  Historically, consumers purchased vertical axis washing machines, which as part of their operation clean and rid themselves of suds, detergent, softener, waste water, and organic materials.  Although consumers expect, based upon decades of experience, that GE's Washing Machines will also effectively clean and rid themselves of suds, detergent, softener, waste water, and organic materials, the GE Washing Machines do not.

4.    The Washing Machines do not effectively clean and rid themselves of suds, detergent, softener, waste water, or organic materials due to the Design Defects, which include, among other things, the failure of the Washing Machines to:

    a.   Properly drain water and waste water;

    b.   Sufficiently eliminate detergent, softener, lint, oils, suds, and organic materials;

    c.   Utilize materials made with sufficient or appropriate anti-microbial additives to prevent, impede, or reduce the growth of mold, mildew, or biofilm (*i.e.*, the filmy substance that develops within the Washing Machines).

5.    As a result of these failures, the Washing Machines do not satisfy the purpose for which they were purchased (*i.e.*, to clean clothes, towels, bedding, and other washable items and to make those items smell fresh and clean).

6.      GE fails to disclose the Design Defects and Mold Problems, and falsely advertises and misrepresents the characteristics, benefits, quality, grade, standard, and uses of its Washing Machines by representing them as "washers" since the machines fail their most basic and fundamental purpose: making items washed within them clean.  Items washed in the Washing Machines smell foul due to the Mold Problems.

7.      GE also fails to disclose the extraordinary maintenance that its Washing Machines require to combat the accumulation of mold, mildew, and biofilm.   The extraordinary maintenance includes, but is not limited to: keeping the door open between washes, which presents a safety risk; running frequent and lengthy hot-water cleaning cycles; running monthly "BasketClean" cycles with bleach; the need to buy and use special washing machine cleaners; and the need to wipe the interior of the Washing Machines, the door glass, and the folds of the rubber door gasket dry after use.  This information is material because a reasonable consumer would want to know how much maintenance is required for the Washing Machines before purchasing one.

8.      As a result of GE's concealment and failure to disclose the Design Defects, Mold Problems, and the extraordinary maintenance required, the Washing Machines are worth less than the price paid by Plaintiff and the Class and cost more to own and operate than GE represented.

9.      Plaintiff asserts claims for violation of the New Jersey Consumer Fraud Act, breach of express warranty, breach of implied warranty, and unjust enrichment.

**JURISDICTION AND VENUE**

10.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and this

is a class action in which Plaintiff and other Class members and GE are citizens of different states.

11.     Venue is proper under 28 U.S.C. § 1391 because GE does substantial business in this judicial district and a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this district. At all pertinent times, GE was and is in the business of marketing, advertising, distributing, and selling products, including the Washing Machines, throughout this District, in Pennsylvania, and nationwide. The Washing Machines that form the basis of this Complaint were purchased from GE and/or from GE's authorized dealers and placed in the stream of commerce by GE into and through this District.

## PARTIES

12.     Plaintiff Suzanne Bowser is a citizen of Pennsylvania, and resides in Bedford, Pennsylvania. On or about March 3, 2007, Plaintiff purchased a GE Washing Machine from Builders Surplus in Pennsylvania, which was installed in her home. Approximately one year ago, Plaintiff began to experience mold, mildew, and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Washing Machine.

13.     Defendant GE is a New York corporation with its principle place of business at 3135 Easton Turnpike, Fairfield, Connecticut.

14.     GE manufactures and sells thousands of Washing Machines each year, a substantial portion of which are sold or offered for sale in Pennsylvania. GE has sold, either directly or indirectly, thousands of its defective Washing Machines nationwide and in the State of Pennsylvania.

## FACTUAL BACKGROUND

15.     GE holds itself out to the public as a manufacturer of safe, technologically advanced, and easy-to-use home appliances, including Washing Machines.  GE is the largest company in the world.  The company proudly boasts of its innovation and advanced technology, its prominence as a catalyst for change, and the benefits that it provides customers and society. GE's breadth of operations includes more than 20 industries and the company employs more than 40,000 engineers and scientists.  Given its size and prominence, consumers trust that GE products will meet or exceed GE's representations.

16.     GE, as one part of its business, manufactures, produces, distributes, and sells Washing Machines, which it makes available throughout the United States.

17.     GE sells Washing Machines both directly and through its network of authorized dealers including leading retailers and on-line merchants.

18.     GE provided Plaintiff and each purchaser of a Washing Machine with an express one-year factory warranty.

19.     In conjunction with each sale, GE marketed, advertised, and warranted that the Washing Machines were of merchantable quality and fit for the ordinary purpose for which such goods were used and were free from defects, or at a minimum would not cause Mold Problems.

20.     GE also made express representations about the quality of its Washing Machines.

21.     In addition to making express representations of the quality of its Washing Machines, GE also touted its Washing Machines as ENERGY STAR washers.

22.     To qualify for the ENERGY STAR label, a manufacturer must comply with current ENERGY STAR Eligibility Criteria, which define the performance criteria that must be

met for use of the ENERGY STAR certification mark on clothes washers and specifying the testing criteria for clothes washers.

23.     Every Washing Machine has the ENERGY STAR logo indicating that the machine is ENERGY STAR compliant.  The ENERGY STAR logo appears prominently on the front of the machines to ensure that customers see the logo.

24.     Members of the Class purchased the Washing Machines, in part, because the machines were ENERGY STAR compliant and would lead to water and energy savings.  In reality, at the recommendation of GE, Class members have to regularly run empty cycles of hot water and/or bleach and/or other products to combat the Mold Problems, contrary to the representation that the machines would lead to water and energy savings.

25.     GE had exclusive knowledge that the Washing Machines have a Design Defect and that the Design Defect causes Mold Problems.  These facts were not known to Plaintiff and the other members of the proposed Classes.  GE's exclusive knowledge of these material facts gave rise to a duty to disclose such facts, which GE failed to perform.

26.     GE represented that the Washing Machines were ENERGY STAR compliant, while concealing from customers the need to run extra cycles of hot water and/or bleach and/or other products to combat the Mold Problems.  GE's representations concerning the efficiency of the Washing Machines gave rise to a duty to disclose the need to run extra cycles.  Upon information and belief, GE has neither considered nor taken into account the extra loads run through the Washing Machines in an attempt to clean the machines.

27.     Further, as the Mold Problems became undeniable, GE began selling or recommending that consumers purchase Tide Washing Machine cleaner to ameliorate the Mold

Problems.  Tide Washing Machine cleaner is one of several products designed, manufactured, and marketed to address Mold Problems in the Washing Machines.

28.     GE provides care instructions with its Owner's Manual & Installation Instructions.  The manual does not make any disclosure about the Mold Problems when used as instructed.  GE fails to inform or otherwise disclose to consumers that, even when operated as instructed by GE, Mold Problems will occur in the Washing Machines and that the Mold Problems will result regardless of washer maintenance due to the Design Defects.

29.     Plaintiff purchased a Washing Machine for household purposes, and at all pertinent times used the machine for its intended purpose, used the recommended high-efficiency ("HE") detergent, and has nonetheless experienced Mold Problems.  Plaintiff contacted GE concerning the Mold Problems and unsuccessfully tried GE's various recommendations to fix the problem.

30.     GE falsely represented that Plaintiff and members of the Class would "spend less time on family laundry and more time doing family activities" due to the extraordinary maintenance required of its Washing Machines.

31.     After all of the extraordinary maintenance failed, GE suggested that Plaintiff leave the washer door open between uses to ameliorate the Mold Problems.  That suggestion poses obvious safety risks to children and pets; indeed, a young child drowned in a Kenmore front loading washer, which prompted the U.S. Consumer Product Safety Commission to open an investigation regarding safety standards for front loaders.  Despite following GE's instruction to leave the washer door open between uses, Plaintiff still experienced Mold Problems with her Washing Machine.

32.     Plaintiff and other Class members experienced and continue to experience Mold Problems even though they have followed the instructions provided by GE including those set forth in GE's manual.

33.     GE intended for customers to believe its statements and representations about its Washing Machines and to trust that its Washing Machines were and are of first-rate quality.  GE concealed material facts regarding the Washing Machines, including the Design Defects, which cause the Washing Machines to experience the Mold Problems, even though consumers used the Washing Machines as instructed by GE.

34.     The Washing Machines are defective in many respects.  Due to those defects, the use of the Washing Machines – as instructed by GE – resulted in conditions creating an excessive propensity for the Washing Machines to accumulate mold and mildew, residue or growth, and moldy odors.  These defects include, among other things,

> a.   the failure of the Washing Machines to properly drain water and to avoid lingering moisture;
>
> b.   the failure of the Washing Machines to sufficiently rinse away detergent and liquid fabric softener to prevent the accumulation of residues that contribute to the formation of mold and mildew and moldy odors;
>
> c.   the failure of the Washing Machines to prevent the accumulation of residues and growths that contribute to the formation of mold and mildew and moldy odors when used as instructed and recommended by GE; and
>
> d.   the failure of the Washing Machines to clean themselves in a manner necessary for the proper functioning of the machines for the intended purpose.

35.     Upon information and belief, defects in the drum also play a role in causing Mold Problems.  Due to the defects in the drum, the machines do not fully or properly drain in connection with each and every wash cycle and/or do not sufficiently permit the rinsing away and/or prevent the accumulation of residues and growths.  As a result, the defects in the drums do not permit the Machines to clean themselves after each load.  Defects in the door seal also play a role in the accumulation of mold and mildew and moldy odors.  Among other things, the door seal does not fully or properly drain and/or remove residues and growths after each wash.

36.     GE was aware, or should have known, before marketing and selling the Washing Machines, that they were inherently defective because even when operated as instructed, the machines were substantially likely to experience Mold Problems.  GE nonetheless failed to warn its customers of the Design Defects inherent in the Washing Machines or the Mold Problems that would result from the Design Defects.

37.     As a result of the Design Defects that have plagued and continue to plague the Washing Machines, Plaintiff and other Class members overpaid for the Washing Machines.  For the reasons detailed herein, GE knew or should have known that the value of the Washing Machines it was selling to consumers was significantly inflated by its misrepresentations and misleading information concerning those machines.  If Plaintiff and other Class members had known about the Design Defects affecting the Washing Machines, they would not have paid the significant sums – often more than $1,000 per machine – that they paid for the Machines.

38.     As a result of the mold and/or mildew odor that permeates items "washed" in the Machines, many consumers have been forced to re-wash or even replace clothes, towels, and other items that have been ruined by the Design Defects in the Washing Machines.

39.     GE has profited, either directly or indirectly, by concealing the true nature of the Design Defects and misrepresenting the cause of the Mold Problems associated with the defects, which has enabled it to:

    a.  sell the Washing Machines at premium prices;

    b.  profit on repair services and parts purportedly used to fix the Mold Problems; and

    c.  sell Tide Washing Machine-related products, which it misrepresented as capable of addressing and resolving the Mold Problems arising from the Design Defects.

In fact, GE has no effective remedy for the Design Defects and Mold Problems and has taken no action to correct the defects.

40.     As a result of GE's false and misleading statements and concealment, and GE's other misconduct described in this Complaint, Plaintiff and the Class bought thousands of Washing Machines and have suffered – and continue to suffer – injury as a result of the defective nature of these Washing Machines and as a result of GE's misconduct.

41.     Far from being an innocuous or isolated defect or problem, in addition to Plaintiff, upon information and belief, thousands of other Washing Machine purchasers have complained directly and indirectly to GE and its authorized dealers and service personnel and on internet websites about the Design Defects and Mold Problems with the Machines.

42.     As a result of the avalanche of consumer complaints regarding the defects that GE would not and/or could not remedy, several companies and entrepreneurs created and marketed products designed to treat, eliminate, and/or minimize the Mold Problems caused by the Design Defects in the Washing Machines.   These products include, among others, SmellyWasher, NuFreshNow, Affresh, Clorox Washing Machine Cleaner, and Tide Washing Machine Cleaner.

Due to the widespread and intractable nature of the Mold Problems, consumers have purchased tens of thousands of units of these products.

43.    Reflecting its knowledge that the Design Defects resulted in serious Mold Problems in the Washing Machines, GE sells Tide Washing Machine Cleaner on its website, as shown in the following picture.   Despite the representations on GE's website and from other media, Proctor & Gamble's Tide Washing Machine Cleaner fails to prevent and/or fix the Mold Problems experienced by Plaintiffs and other Class members.





44.     Upon information and belief, GE developed a new line of high-efficiency top-loading washers known as the GE Profile Harmony™ Topload Washer due, in part, to the Design Defects and Mold Problems.

45.     Despite having repeated notice of the above-described Design Defects and Mold Problems in the Washing Machines and despite the reasonable expectations of consumers created by GE's marketing of its Washing Machines, GE has engaged in the following routine, albeit wrongful course of conduct, where GE:

a.   designed, manufactured and sold Washing Machines with Design Defects that cause Mold Problems;

b.   failed to disclose that the Washing Machines had Design Defects that cause Mold Problems;

c.   continued to represent expressly or by implication that the Washing Machines that Plaintiffs and Class members purchased were dependable, cost effective, and would provide outstanding cleaning and performance as washing machines when it knew that these statements were false;

d.   continued to manufacture, market, advertise, distribute, and sell the Washing Machines to consumers when it knew or should have known that the Washing Machines were not dependable and would not withstand normal operation;

e.   failed to disclose to consumers the substantial risk of Washing Machine failure and the material defects in the Washing Machines;

f.   failed to disclose the nature of the Design Defects to consumers;

g.   failed to disclose the many complaints it received from consumers or the high incidence of attempted, but futile, repairs of the Washing Machines;

h.   failed to implement a recall to adequately announce, remedy, and correct the defects for consumers;

i.   failed to disclose to consumers that GE was not committed to making effective repairs under its warranties to address Mold Problems;

j.   failed to take action to correct its omissions or false or misleading express representations about the use, efficacy, qualities, and benefits of its Washing Machines; and

k.   failed to disclose that despite following the recommended procedures within the GE Owner's Manual & Installation Instructions consumers would still experience Mold Problems.

46.   By engaging in the foregoing course of conduct, GE has caused consumers – including Plaintiff and the Class – to be aggrieved and suffer ascertainable losses in that, among other things, GE's course of conduct systematically:

a.   caused Plaintiff and the Class members to pay premium prices for a defective product;

b.   reduced the value of the Washing Machines purchased by Plaintiff and the Class; and

c.   caused reasonable consumers like Plaintiff and other Class members to spend time and money for attempted repairs and other purported remedies, such as Washing Machine cleaners, of the defects in their Washing Machines that they would not have spent, but for GE's wrongful conduct.

47.     To this day, GE continues to conceal material information from users, consumers, and the public that

    a.   the Washing Machines are inherently defective; and

    b.   the Washing Machines are not of merchantable quality.

48.     Any limitations on remedies contained in GE's express warranties fail of their essential purpose and are unenforceable with respect to the Mold Problems at issue here.  When GE is notified of the Mold Problems, it fails to provide any repairs, replacement of parts, or any other remedy that adequately addresses the Mold Problems.  For the same reason, to the extent that there is any notice requirement imposed by law, notice is not required because GE has (and had) actual knowledge of the Mold Problems and notice to it would be futile (in that GE failed to provide an effective remedy).

**PLAINTIFF SUZANNE BOWSER'S EXPERIENCE WITH HER WASHING MACHINE**

49.     Plaintiff purchased a Washing Machine from Builders Surplus for household purposes on or about March 3, 2007.  She paid approximately $579.99 for the Washing Machine and at all times used the Washing Machine as instructed by GE's manual or otherwise directed by GE.  After the purchase of her Washing Machine, Plaintiff noticed a foul, mold, or mildew odor emanating from the Washing Machine.  Plaintiff has always left the door open since she purchased the machine and has cleaned the unit on a regular basis but it failed to correct the Mold Problems.

50.     Plaintiff contacted GE so that GE could correct the Mold Problems or instruct Plaintiff so that she may correct the problems.  GE recommended to Plaintiff that she leave her Washing Machine door open between washes to reduce the incidence and affects of the Mold

Problem and provided Plaintiff with a box of Time Washing Machine Cleaner.  GE has refused to correct the Mold Problems.

51.     Plaintiff has tried to clean her Washing Machine using bleach, vinegar, and Tide Washing Machine Cleaner.  She also has manually cleaned the visible Mold Problem from the gasket and the hose at the bottom of the Machine.  Plaintiff also had a certified technician from Sears to her home to attempt to remedy the Mold Problems.  The service technician used an Affresh table through a hot cycle and cleaned the dispenser drawer.  After the service technician left, the Mold Problems were still prevalent.

52.     Despite these attempts at cleaning, Plaintiff's Washing Machine continues to suffer from Mold Problems.

## FRAUDULENT CONCEALMENT

53.     The statute of limitations has been tolled by GE's knowing and active concealment of the fact that the Washing Machines cause Mold Problems.  GE kept Plaintiff ignorant of vital information essential to the pursuit of her claim, without any fault or lack of diligence on the part of Plaintiff.  Plaintiff could not have reasonably discovered the fact that her Washing Machine would experience Mold Problems due to the Design Defects.

54.     GE was and is under a continuous duty to disclose to Plaintiff the true character, quality, and nature of the Washing Machines.  At all relevant times, and continuing to this day, GE knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the Washing Machines.  Plaintiff reasonably relied upon GE's affirmative misrepresentations and knowing, affirmative, and/or active concealment.  Based on the foregoing, GE is estopped from relying on any statutes of limitation in defense of this action.

## CLASS ACTION ALLEGATIONS

### A.     Definition of the Class

55.     Plaintiff brings this action on behalf of himself and all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

56.     The Classes, of which Plaintiff is a member, that Plaintiff seeks to represent are defined as follows:

> **Nationwide Class**:
> All persons who own a Washing Machine for personal, family, or household purposes, and not for resale, in the United States.
>
> **Sub-Class**:
> All persons who own a Washing Machine for personal, family, or household purposes, and not for resale, in the State of California, Illinois, Michigan, New Jersey, New York, and Pennsylvania.

Excluded from the Classes are GE, its affiliates, employees, officers and directors, persons or entities that distribute or sell the Washing Machines, the Judges assigned to this case, and the attorneys of record in this case.  Plaintiff reserves the right to amend the Class definitions if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

### B.     Numerosity

57.     The members of the Classes are so numerous that joinder of all members would be impracticable.  GE has sold thousands of Washing Machines throughout the nation.  While the precise numbers of members are unknown to Plaintiffs, that information can be ascertained through discovery.

### C.      Commonality

58.      There are common questions of law and fact that predominate over any questions affecting only individual members of each Class.  Those common legal and factual questions, include, but are not limited to the following:

(a)      Whether the Washing Machines are defective;

(b)      Whether GE knew that the Washing Machines were and are defective;

(c)      Whether GE omitted and concealed material facts from its communications and disclosures to Plaintiffs and the Classes regarding the defects inherent in the Washing Machines;

(d)      Whether GE has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in connection with the sale of the Machines;

(e)      Whether Pennsylvania law can and should be applied to the Nationwide Class;

(f)      Whether GE violated various state consumer protection statutes;

(g)      Whether GE breached its warranty and/or extended warranties;

(h)      Whether GE breached its implied warranties;

(i)      Whether GE has been unjustly enriched;

(j)      Whether, as a result of GE's conduct, Plaintiffs and the Classes have suffered damages; and if so the appropriate amount thereof; and

(k)      Whether, as a result of GE's misconduct, Plaintiffs and the Classes are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

### D.      Typicality

59.      Plaintiff has the same interests in this matter as all other members of the Class. Plaintiff and all Class members have been injured by the same wrongful practices of GE.

60.      Plaintiff's claims arise form the same practices and course of conduct that give rise to the claims of all Class members and are based on the same legal theories.

### E.      Adequacy

61.      Plaintiff is committed to pursuing this action and has retained competent counsel experienced in the prosecution and successful resolution of consumer class actions.   Neither Plaintiff nor her counsel have any interests contrary to or conflicting with the Classes.

### F.      The Prerequisites of Rule 23(b)(2) are Satisfied

62.      The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Rule 23(b)(2) exist as Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

63.      The prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of conduct for Defendant.   For example, one court might decide that the challenged actions are illegal and enjoin them, while another court might decide that those same actions are not illegal.   Individual actions may, as a practical matter, be dispositive of the interest of Class members, who would not be parties to those actions.

64.      Defendant's actions are generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

65.      Defendant's systemic policy and practices make declaratory relief with respect to the Class as a whole appropriate.

### G.      The Prerequisites of Rule 23(b)(3) are Satisfied

66.      This case satisfies the prerequisites of Rule 23(b)(3).   The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.   The likelihood that individual members of the Class will prosecute separate actions

is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive and equitable relief at issue for each individual Class member.

67.     Plaintiff does not anticipate any difficulty in the management of this litigation.

68.     GE has, or has access to, address information for the Class members, which may be used for the purpose of providing notice of the pendency of this action.

69.     This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class defined above.

## COUNT I

**(Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 P.S. § 201-1 et seq. and Substantially Similar Laws of Certain Other States)**

70.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

71.     At all times relevant hereto, there was in full force and effect the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq. and substantially similar state consumer protection statutes (the "Act").  Similar statutes, identical in their material respects, are in effect in many jurisdictions within the United States.[1]

72.     GE is a person as defined at 73 P.S. § 201-2(2).

---

[1] The consumer fraud claims of Plaintiff and resident absent class members is brought under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq.  The consumer fraud claims of nonresident absent class members are brought under the consumer protection statute(s) of their respective states of residence.  *See e.g*., Cal. Bus. & Prof. Code § 17200 *et seq.*, and Cal. Bus. & Prof. Code § 17500 *et seq.* (California); Ill. Comp. Stat. 815 ILCS 505/1 *et seq.* (Illinois); Mich. Stat. Ann. § 19.418(1) *et seq.* (Michigan); N.J. Rev. Stat. § 56:8-1 *et seq.*, N.J. Rev. Stat. § 56:12-1 *et seq.* (New Jersey); N.Y. Gen. Bus. Law § 349 *et seq.* (New York).

73.     GE offered Front Load Washers for sale in "trade" or "commerce" as defined at 73 P.S. § 201-2(3).

74.     As set forth above, GE engaged in fraudulent conduct in its false marketing of its Front Load Washers, including but not limited to its misrepresentation that the Washers would clean clothes and its omission that the Washers require extraordinary maintenance and associated expenses to combat Mold Problems in the Machine.

75.     GE's conduct constitutes unfair methods of competition and unfair or deceptive acts or practices as defined at 73 P.S. § 201-2(4)(vii), (ix), (xiv) and (xxi).

76.     Plaintiff and the members of the Proposed Class relied on GE's fraudulent misrepresentation and omissions in purchasing and applying GE Front Load Washers.

77.     Plaintiff and the members of the Proposed Class have suffered direct, incidental, and consequential damages as a proximate result of GE's wrongful conduct.

## COUNT II

### (Breach of Express Warranty)

78.     Plaintiff repeats the allegations contained in the prior paragraphs, as if fully set forth herein.

79.     GE made affirmations of fact and promises to Plaintiff and members of the Classes that related to the Washing Machines as more fully described herein.

80.     GE's affirmations of fact and promises became part of the basis of the bargain between the parties.

81.     These affirmations of fact and promises created an express warranty that the Washing Machines would conform to GE's affirmations and promises.

82.     GE uniformly warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that the Washing Machines suffered from serious defects and, nevertheless, continued to market and sell the Washing Machines with this express warranty.

83.     GE is obligated under the terms of its written warranty to repair and/or replace the defective Washing Machines sold to Plaintiff and members of the Class.

84.     GE has breached its written warranty, as set forth above, by supplying the Washing Machines in a condition that does not meet the warranty and obligations undertaken by GE and by failing to repair or replace the defects and/or defective parts.

85.     As set forth above, GE's warranty fails in its essential purpose and, accordingly, Plaintiff and members of the Classes cannot and should not be limited to the remedies set forth in GE's written warranty and, instead, should be permitted to recover all measure of appropriate relief.

86.     GE has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and GE's knowledge of the defects in the Washing Machines.  GE has failed and refused to honor its warranty, even though it knows of the defects inherent in the Washing Machines.

87.     Plaintiff and members of the Classes have given GE a reasonable opportunity to cure its failures with respect to its warranty, and GE has failed to do so.

88.     GE has failed to provide Plaintiff and members of the Classes, as a warranty repair and/or replacement, a product that conforms to the qualities and characteristics that GE expressly warranted when it sold the Washing Machines to Plaintiff and members of the Classes.

89.     As a result of GE's breach of express warranty, Plaintiff and members of the Classes have suffered damages in an amount to be determined at trial.

## COUNT III

### (Breach of Implied Warranty of Merchantability)

90.     Plaintiff repeats the allegations contained in the prior paragraphs, as if fully set forth herein.

91.     GE is a merchant in the sale of the Washing Machines to Plaintiff and the members of the Classes and the Washing Machines are goods under applicable law.

92.     Plaintiff and members of the Classes are in privity with GE in that they purchased their Washing Machines directly from GE or from an actual or apparent agent of GE such as its authorized dealers.

93.     Plaintiff and members of the Classes are also in privity with GE by virtue of the contractual relationship stemming from GE's manufacturer's warranty provided in conjunction with the purchase of the Washing Machines, which is enforceable by Plaintiff and the members of the Classes as against GE regardless of where, or from whom, the Washing Machines were acquired.

94.     GE, as the manufacturer and seller of the Washing Machines, was obligated to make certain that the Washing Machines were reasonably fit for the purposes for which such products are used, and that the Washing Machines are acceptable in trade for the product description.

95.     Notwithstanding the aforementioned duty, at the time of delivery, the Washing Machines sold to Plaintiff and the Class were not merchantable.

96.     As documented in its own business records and elsewhere, Defendant was aware, or should have known, that that the Washing Machines were not merchantable within a reasonable time after the latent defect manifested itself to Plaintiff and the Class.

97.     As a result of the Design Defects, Mold Problems and overall non-merchantability of the Washing Machines described herein, Plaintiff and other members of the Class have sustained damages in an amount to be determined at trial.

## COUNT IV

### (Unjust Enrichment)

98.     Plaintiff repeats the allegations contained in the prior paragraphs, as if fully set forth herein.

99.     This claim is asserted in the alternative on behalf of Plaintiff and the members of the Classes to the extent that the warranties do not govern all of Plaintiff's and Class members' claims or there is any determination that Plaintiff does not have standing to assert any contractual claims against GE because of any alleged absence of contractual privity or otherwise.

100.     Defendant received and retained a benefit conferred by Plaintiff and Class members at their expense through the purchase of GE Washing Machines.

101.     GE has benefitted unjustly at Plaintiff's and Class members' expense.

102.     It would be inequitable and unjust for GE to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Washing Machines.

103.     Plaintiff and the Class members have no adequate remedy at law because of GE's conduct.

104.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class members have suffered non-monetary and monetary injury.

105.     Plaintiff and the members of the Classes seek restitution from GE and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by GE from its wrongful conduct and establishment of a constructive trust from which Plaintiff and members of the Classes may seek restitution.

WHEREFORE, Plaintiff, individually and on behalf of the Classes described herein, prays for judgment against GE as follows:

A.     For an Order certifying the Classes under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), appointing Plaintiff as Class representative, and appointing the lawyers and law firms representing Plaintiff as Class Counsel.;

B.     Entering judgment in favor of Plaintiff and the members of the Class and against Defendant;

C.     For all recoverable compensatory, statutory, and other damages sustained by Plaintiff and the Classes;

D.     For both pre-judgment and post-judgment interest on any amounts awarded;

E.     For appropriate injunctive relief;

F.     For payment of attorneys' fees and costs; and

H.     For such other and further relief as the Court deems proper.

### Jury Demand

Plaintiff demands a trial by jury on all issues so triable.

Dated:  January 30, 2012          By: _____

Jonathan Shub
Scott Alan George
SEEGER WEISS, LLP
1515 Market Street
Suite 1380
Philadelphia, PA  19102
Phone:  (215) 564-2300
Fax No. (215) 851-8029
Email:  jshub@seegerweiss.com
           sgeorge@seegerweiss.com


Richard J. Burke, Esquire
Julie D. Miller, Esquire
Complex Litigation Group, LLC
111 West Washington Street
Suite 1331
Chicago, IL 60602
Phone:  (312) 220-0000
Fax:  (312) 220-7777

*Counsel for Plaintiff and
Proposed Plaintiff Classes*